**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1694
_____

UNITED STATES OF AMERICA

v.

STEPHAN EDWARD CORRICK,
                              Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-16-cr-00164-001)
District Judge: Hon. Donetta W. Ambrose
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2019
_____

Before: GREENAWAY, JR., SHWARTZ, and PORTER, *Circuit Judges*.

(Opinion Filed: May 29, 2019)
_____

OPINION [*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

After pleading guilty to several federal crimes arising out of two armed robberies, Appellant Stephan Corrick ("Corrick") received a sentence of 171 months of imprisonment, a sentence at the bottom of his advisory range calculated under the applicable United States Sentencing Commission Guidelines ("Guidelines"). On appeal, Corrick avers that the District Court's sentence was both procedurally and substantively unreasonable. We disagree for the reasons set forth below. Accordingly, we will affirm the District Court's sentence.

## I. BACKGROUND

During the spring of 2016, Corrick and Dana Shipley ("Shipley") committed two armed robberies of pharmacies in the Pittsburgh area. Between both robberies, Corrick and Shipley stole approximately $2,200 in cash and $45,000 worth of various prescription drugs that qualify as controlled substances. Although Corrick and Shipley escaped from the scenes of the crimes, investigators eventually identified and located both of them. While speaking with investigators, Corrick confessed to both robberies.

Based on the confession and other evidence, Corrick was charged in the summer of 2016 with six counts, including conspiracy, robberies of both pharmacies, possessing and brandishing a firearm in furtherance of a crime of violence, and possession with intent to distribute controlled substances. Eventually, Corrick pled guilty to all of the counts in his indictment.

Using the 2016 Guidelines, the presentence investigation report ("PSR")

2

calculated a total offense level of 28[1] and a criminal history category of II. Accordingly, the PSR computed a Guidelines range of 171 to 192 months of imprisonment—87 to 108 months for five counts and 84 months, to run consecutively, for a sixth count.

As relevant here, Corrick objected to the PSR's marijuana equivalency, arguing that the District Court should replace the 1 to 6,700 conversion ratio for Oxycodone and Hydrocodone with the 1 to 1,000 conversion ratio for heroin. Applying the heroin ratio, Corrick argued, would reduce the total quantity of drugs to the equivalent marijuana weight of 444 kilograms and thus lessen his base offense level to 26. Corrick, however, provided no authority for his request to change the conversion calculus. Accordingly, an addendum to the PSR maintained the prior base offense level calculation of 30, noting that the drug conversions were computed several times and followed the Guidelines' recommendation.

In his sentencing memorandum, Corrick again raised his objection to the drug conversion ratio. His argument refined, Corrick there focused on the drafting history of the relevant equivalencies. In particular, Corrick noted that the Oxycodone to marijuana conversion ratio—which used to be 1 to 500—had been increased by a 2003 amendment

---

[1] Where, as with several of Corrick's counts here, certain drug crimes involve multiple controlled substances, the Guidelines provide that each drug's weight should be converted to an equivalent marijuana weight to determine the base offense level. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8 (U.S. Sentencing Comm'n 2016). Using the Guidelines' conversion ratios for each controlled substance at issue—including 1 to 6,700 for Oxycodone and Hydrocodone, *id.*—the PSR tallied a marijuana equivalency of nearly 2,550 kilograms. Thus, in determining Corrick's total offense level, the PSR began with a base offense level of 30. Then, after considering Corrick's acceptance of responsibility, the PSR arrived at a total offense level of 28.

to 1 to 6,700 despite no corresponding increase to, for example, the heroin to marijuana conversion ratio. Lamenting that the increase was not based on empirical data or scientific studies, Corrick thus proposed that the District Court vary downward by instead applying the 1 to 1,000 heroin ratio.

Corrick also urged that the District Court vary downward based on various mitigating factors: namely, his abusive childhood, poor health, old age, family ties and responsibilities, and acceptance of responsibility.

At Corrick's sentencing hearing, the District Court heard argument on both issues—the conversion ratio issue and the mitigating factors issue—before imposing a sentence. As to the first issue, Corrick's counsel reasserted his argument that the District Court should vary downward from the Guidelines' recommendation by instead applying a 1 to 1,000 conversion ratio for Oxycodone and Hydrocodone. Rejecting that contention as merely a "policy argument," App. 92, the District Court adopted the Guidelines range calculation from the PSR. Corrick's counsel agreed to the Guidelines range stated by the District Court, but only "subject to the objections stated." *Id.* at 97.

The District Court then shifted to determining the appropriate sentence to be imposed. At that point, Corrick's counsel addressed the second issue, chronicling the various mitigating factors that, he asserted, warranted a downward variance to a total sentence of 96 months and one day of imprisonment. Unmoved, the District Court instead determined that the facts presented were not extraordinary enough to justify a variance.

Then, after carefully and expressly considering the relevant sentencing factors—as

4

outlined in 18 U.S.C. § 3553(a)—and mitigating factors, the District Court imposed a sentence it believed was sufficient but not greater than necessary: 171 months of imprisonment, a term at the very bottom of the Guidelines range. Upon doing so, the District Court asked Corrick's counsel whether he wanted to discuss anything further. Corrick's counsel only requested a recommendation for a specific prison housing. Importantly, he did not raise any objections to the sentence after its imposition.

Corrick now appeals his sentence. Before us, Corrick avers that the District Court (1) procedurally erred and (2) substantively erred by denying a downward variance due to (a) the high drug conversion ratio used to calculate his Guidelines range and (b) the mitigating factors relating to, among other things, his childhood, health, age, and family ties.[2] For the reasons set forth below, however, we will affirm the District Court's sentence.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291. Typically, we review claims for procedural and substantive error for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). If, however, the asserted procedural error is purely legal, we exercise plenary review over the claim. *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir.

---

[2] Though at times ambiguous and inconsistent, Corrick's appellate briefs seem to press both issues—the conversion ratio issue and the mitigating factors issue—as constituting both procedural and substantive error. In light of the "difficulty of parsing out the differences between substantive and procedural claims" and in an abundance of caution, we review both issues for both types of error. *United States v. Flores-Mejia*, 759 F.3d 253, 264 (3d Cir. 2014) (en banc) (Greenaway, Jr., J., dissenting).

2008).

### III. DISCUSSION

"Our responsibility on appellate review of a criminal sentence is limited yet important:  we are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way."  *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008).  To this end, district courts must follow the three-step sentencing procedure set forth in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).  First, a district court must calculate the applicable Guidelines range.  *Wise*, 515 F.3d at 216.  Second, it must rule on any motions for departure and, if a motion is granted, state how the departure affects the Guidelines calculation.  *Id.*  Third, after allowing the parties an opportunity for argument, it must consider all of the sentencing factors and determine the appropriate sentence to impose, which may vary from the calculated Guidelines range.  *Id.* at 216–17.

Although Corrick now seems to press errors regarding both steps two and three, *e.g.,* Appellant's Br. 34 (Corrick's protesting that "[t]he [D]istrict [C]ourt declined to depart or vary below the [G]uidelines over objection"), we are constrained to reviewing his claims concerning only step three.  *See United States v. King*, 604 F.3d 125, 141 n.9 (3d Cir. 2010) ("[W]e lack jurisdiction to review [the] denial [of a downward departure motion] unless the District Court was unaware of its discretion to grant the motion[.]" (citation omitted)); *see also* App. 96 (the District Court's noting that it is "not bound to follow" the Guidelines).  Accordingly, we review only whether the District Court erred in denying Corrick's requests for a downward variance.  In regard to that, Corrick asserts that the District Court committed both procedural and substantive errors.  We address

6

each in turn.

## A. Procedural Error

When reviewing a district court's sentence for procedural fairness, we evaluate whether the district court committed a "significant procedural error" by, as relevant here, "failing to consider the [sentencing] factors." *Gall*, 552 U.S. at 51. There is no procedural error where a district court gives "rational and meaningful consideration" to the sentencing factors. *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc) (citations omitted). For such meaningful consideration, a district court need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citation omitted).

As a threshold matter, we must determine whether Corrick's specific claims of procedural error are subject to abuse of discretion or plain error review. Under *Flores-Mejia*, "when a party wishes to take an appeal based on a procedural error at sentencing[,] . . . that party must object to the procedural error complained of after sentence is imposed in order to avoid plain error review on appeal." 759 F.3d at 255. But where a party "make[s] an objection to a procedural error at an earlier point[,] . . . when the procedural error became evident, the defendant need not repeat the objection after sentence is imposed." *Id.* at n.1.

Before the District Court, Corrick's counsel did exactly that as to one of the two procedural errors he now presses. Indeed, he lodged objection after objection regarding the conversion ratio issue—in his response to the PSR and sentencing memorandum and

7

then at length during the sentencing hearing. After the District Court nonetheless adopted the Guidelines range calculation from the PSR, Corrick's counsel agreed to the calculation only "subject to the objections stated" regarding the conversion ratio issue. App. 97. Because Corrick's procedural objection was evident, he was not required to repeat his procedural objection to the conversion ratio after the District Court imposed its sentence. *See Flores-Mejia*, 759 F.3d at 255 n.1.

But Corrick's counsel never raised a formal objection as to the mitigating factors issue. Although, at the sentencing hearing, he argued for a below-Guidelines sentence due to the various mitigating factors, he did not object after the District Court rejected that argument in imposing its sentence. That issue thus falls within *Flores-Mejia*'s ambit. In light of this analysis, we review Corrick's two procedural error claims separately—the first, concerning the conversion ratio, for abuse of discretion and the second, concerning the mitigating factors, for plain error.

### 1. Conversion Ratio Issue

Corrick argues that the District Court committed procedural error when it denied his request for a downward variance due to the high drug conversion ratio used in calculating his Guidelines range. More specifically, Corrick claims as procedural error (1) that the District Court did not meaningfully consider his objection to the conversion ratio and (2) that the Guidelines' conversion ratio for Oxycodone and Hydrocodone lacks empirical data or scientific studies. Both claims, however, are unavailing.

First, the District Court did meaningfully consider Corrick's request for a downward variance due to the drug conversion ratio. Indeed, at the sentencing hearing,

8

the District Court heard argument regarding the conversion ratio issue. At steps one and two of *Gunter*, the District Court carefully explained that, given the "crisis caused by the distribution of drugs such as Oxycodone and Hydrocodone," it deemed the Guidelines range appropriate. App. 96. Then, at step three of *Gunter*, the District Court imposed its sentence only after clarifying that it "considered very carefully [Corrick's counsel's] impassioned and very effective request for . . . [a] variance." *Id.* at 120. Because the District Court articulated enough in denying Corrick's variance request on account of the drug conversion ratio at issue, we cannot say it abused its discretion.

Second, the District Court had no obligation to analyze whether the Guidelines' conversion ratio for Oxycodone and Hydrocodone were based in empirical data or scientific studies. Time and time again, we have made clear that district courts are not required to entertain such empirical challenges. *See, e.g.*, *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3d Cir. 2009) ("[A] district court is not required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." (citations omitted)). Although district courts have the discretion to make variances based on such policy arguments, they are not under the obligation to do so. *See United States v. Duarte*, 569 F.3d 528, 530 (5th Cir. 2009) ("*Kimbrough* [*v. United States*, 552 U.S. 85 (2007)] does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the . . . [G]uidelines."). Here, as explained previously, the District Court meaningfully considered Corrick's empirical challenge to the drug conversion ratio in dispute. But, even if it did not, we would still affirm its sentence as procedurally sound on this matter.

9

## 2. Mitigating Factors Issue

Corrick also argues that the District Court committed procedural error when it denied his request for a downward variance despite the various mitigating factors he presented. In particular, Corrick asserts that the District Court procedurally erred by viewing mitigation "without relating it to [Corrick's] abusive and loveless childhood." Appellant's Br. 36 (citation omitted). As discussed previously, we review this claim for plain error.

The plain error test requires: (1) an error; (2) that is "clear or obvious"; and (3) that "affected the defendant's substantial rights," which ordinarily means that the defendant must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Shaw*, 891 F.3d 441, 454 n.16 (3d Cir. 2018) (citation and internal quotation marks omitted). Once these three requirements are met, "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018) (citation omitted).

Corrick's procedural error claim falters at the very first requirement, as the record demonstrates that the District Court committed no procedural error. Indeed, the District Court imposed its sentence only after meaningfully considering all of the mitigating factors, especially Corrick's childhood. At the sentencing hearing, after Corrick's counsel presented lengthy arguments regarding the personal challenges Corrick faced as a child, the District Court expressly recognized the difficulty of Corrick's childhood. *See*

10

App. 117 (the District Court's stating that it "recognized[d] that [Corrick] did have a difficult childhood, that [his] parents, even [his] mother, were not fully present in [his] life, and certainly not [his] father"). Then, before imposing its sentence, the District Court explicitly balanced that mitigating factor along with the other sentencing factors. *See id.* at 120 (the District Court's explaining that it "considered very carefully [Corrick's counsel's] impassioned and very effective request for . . . [a] variance" and noting that Corrick's "childhood was sad" but nonetheless finding it insufficient to justify a variance in light of the other sentencing factors).

Given the District Court's clear and thorough consideration of the mitigating factors, especially Corrick's difficult childhood, we perceive no procedural error—much less plain error—in its denying Corrick's request for a downward variance. Because both of Corrick's claims for procedural error are thus futile, we deem the District Court's sentence procedurally sound.

### B. Substantive Error

Satisfied with the procedural fairness of the District Court's sentence, we now turn to assessing its substantive reasonableness. We analyze substantive reasonableness based on "the totality of circumstances," *United States v. Whiteford*, 676 F.3d 348, 364 (3d Cir. 2012) (citation omitted), and "will affirm [a district court's sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided," *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). In reviewing the substantive reasonableness of a sentence, we look to "whether the final sentence, wherever it may lie within the

11

permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011) (citation omitted). But we have expressly held that "a district court's failure to give mitigating factors the weight a defendant contends they deserve" does not render the sentence substantively unreasonable. *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007) (citations omitted). Instead, our substantive reasonableness review is "highly deferential." *Id.* at 543 (citation omitted). Where, as here, there is no procedural error, we are "entitled to presume that a sentence within the advisory Guidelines is reasonable." *United States v. Handerhan*, 739 F.3d 114, 124 (3d Cir. 2014) (citation omitted).

Here, Corrick claims that the District Court substantively erred by denying his request for a downward variance due to (1) the high drug conversion ratio used in calculating his Guidelines range and (2) the various mitigating factors that were presented, including his abusive childhood, poor health, old age, family ties and responsibilities, and acceptance of responsibility. Neither claim, however, is fruitful.

### 1. Conversion Ratio Issue

As to the drug conversion ratio issue, the District Court did not commit any substantive error. We have previously held that an "applicable Guidelines range . . . is not rendered unreasonable simply because [a provision of the Guidelines] establishes a base offense level" with which a defendant takes issue. *Lopez-Reyes*, 589 F.3d at 672; *see United States v. Lopez*, 650 F.3d 952, 967 (3d Cir. 2011) (holding that a district court need not disregard a Guidelines provision with which it disagrees and an appellate court only examines whether the sentence is reasonable in light of the sentencing factors).

12

Here, the District Court was not required to grant Corrick a downward variance based on his arguments against the Guidelines' drug conversion ratio for Oxycodone and Hydrocodone. *See Duarte*, 569 F.3d at 530. It also carefully reviewed each of the applicable sentencing factors. Accordingly, it did not commit any substantive error in imposing a sentence within the Guidelines range.

## 2. Mitigating Factors Issue

The District Court also did not commit any substantive error in regard to the mitigating factors issue. On this matter, Corrick essentially takes issue with the weight the District Court afforded the various sentencing and mitigating factors at play. *See* Appellant's Br. 38–39 (Corrick's arguing that the District Court took an "overly-cynical view" of him and "minimized" his difficult childhood). But we have previously held that failing to give factors the weight a defendant contends they deserve does not render a district court's sentence unreasonable. *Bungar*, 478 F.3d at 546. Corrick's argument as to this issue is thus a non-starter.

The touchstone of the substantive reasonability inquiry is rather whether the final sentence was premised upon the "appropriate and judicious consideration of the relevant factors." *Young*, 634 F.3d at 237 (citation omitted). The District Court here did just that, which even Corrick effectively concedes. Appellant's Br. 38 (Corrick's noting that "the District Court was careful to mention the applicable factors"). It then imposed a sentence at the bottom of the Guidelines range, which we may afford a "presumption of reasonableness." *Rita*, 551 U.S. at 347. Hence, we conclude that the sentence the District Court imposed on Corrick is substantively reasonable.

13

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's sentence.

PORTER, *Circuit Judge*, concurring in the judgment:

I share the judgment affirming the District Court's sentence. I write separately because I find that, although Stephan Corrick vigorously pressed his *substantive* objection about the policy merits of the conversion ratio before the District Court, he failed to preserve the *procedural* objection he raises on appeal. That is, he never objected to the sentencing court's alleged "failure to give meaningful review to [his] substantive arguments." *United States v. Flores-Mejia*, 759 F.3d 253, 256–57 (3d Cir. 2014). So I would review that issue only for plain error. But as the majority opinion explains, Corrick's claim also fails under the abuse-of-discretion standard of review, so I concur in the judgment on the conversion ratio issue.